WRIGHT & KIRSCHBRAUN
A Limited Liability Law Company

DEBORAH K. WRIGHT     4444
DOUGLAS R. WRIGHT     9643
1885 Main Street, Suite 106
Wailuku, HI  96793
Telephone: 808-244-6644
Facsimile: 808-244-1013
Email: deborah@wkmaui.com
       doug@wkmaui.com

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.


JUSTIN A. BRACKETT (HI Bar No. 9954)
515 Ward Avenue
Honolulu, HI  96814
Telephone: (808) 377-6778
Email:  justinbrackettlaw@gmail.com

DURAN L. KELLER (Admitted Pro Hac Vice)
8 N 3rd Street, Suite 403
Lafayette, IN 47901
Telephone: (765) 444-9202 Email:
duran@kellerlawllp.com

*Attorneys for Plaintiff*
Demetre Durham

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEMETRE DURHAM,<br><br>       Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>       Defendant. | CIVIL NO. CV 23-00255 MWJS-KJM<br><br>JOINT LETTER BRIEF IN RE: DEPOSITION & DOCUMENT REQUEST FOR EXPERIAN INFORMATION SOLUTIONS, INC<br><br>Magistrate Judge: Kenneth Mansfield<br>Trial Date: December 2, 2024<br>Trial Judge: Micah W.J. Smith |

April 22, 2024

*Via Email:* **mansfield_orders@hid.uscourts.gov**

The Honorable Kenneth J. Mansfield
United States District Court
District of Hawaii
300 Ala Moana Blvd C-338
Honolulu, HI 96850

**RE:** *Defendant's Objections to Deposition Topics*

Dear Magistrate Judge Mansfield:

Defendant Experian Information Solutions, Inc. ("Experian") is requesting expedited discovery assistance from the court pursuant to LR 37.1 regarding the categories of examination identified by Plaintiff Demetre Durham ("Plaintiff") in his FRCP 30(b)(6) Notice of Deposition and Document Request for Experian's corporate representative ("NOD"). The NOD was originally submitted to Defendant on February 29, 2024 and amended on March 22, 2024.

Counsel for the parties have met and conferred.[1] On April 12, 2024 Plaintiff further amended and served his Second Amended NOD. On April 12, 2024, Experian submitted written objections to 26 of the 32 topics in Plaintiff's NOD. The parties reached an impasse and agreed to submit letter briefs. As instructed, we are submitting a joint letter brief.

---

[1] Experian identified 18 of the 32 topics it would be objecting to via email on April 2, 2024. Counsel met and conferred for an hour by phone on April 4, 2024, and had further discussions via email subsequent to that meet and confer.

The Honorable Kenneth J. Mansfield
United States District Court
April 22, 2024
Page | 2

## **PLAINTIFF'S POSITION**

Mr. Durham wishes to secure critical proofs necessary for trial. He seeks to depose Experian through Rule 30(b)(6)[2] and has prepared catered topics to discover the information he needs. Mr. Durham intended to withdraw Topic #10 (Experian's knowledge, understanding and application of the legal impact of court decisions).

Experian received and ignored Mr. Durham's repeated disputes of a fraudulent collection tradeline by a junk debt collector, National Credit Adjusters, LLC ["NCA"]. His disputes include a March 30, 2023 call with Experian, an online dispute, and two dispute letters. Mr. Durham never opened the original account and never incurred the fraudulent debt, all of which he detailed to Experian. This erroneous collection account destroyed Mr. Durham's credit and caused him to be denied for credit when Experian broadcasted inaccurate information. Experian's negligent and reckless conduct caused Mr. Durham emotional harm in addition to lost credit opportunities.

The credit reporting conglomerate failed to conduct any reasonable investigation as required by the Fair Credit Reporting Act (FCRA), a federal law for consumer reporting agencies who profit from selling consumer credit data. Experian does not seriously doubt that the item is inaccurate, but the credit reporting giant maintains that its procedures were reasonable, a conclusion Mr. Durham must affirmatively disprove.

Despite being on notice that its system fails to ensure accuracy, Experian has no reasonable procedure in place to determine accuracy. Experian profited from the credit reports it sold, and which were used in determining Mr. Durham's denied application for credit. Experian has a history of disregarding credit disputes, as proven by multiple consumers who have supplied deposition testimony to that effect. Experian has evidence that it regularly and systematically maintains inaccurate credit information following disputes by consumers. This case presents issues of the utmost importance not just to the local community, but to millions of Americans who need credit.

People and the banking system depend on fair and accurate credit reporting. Elaborate mechanisms have been developed for **investigating** and evaluating credit worthiness, credit standing, credit capacity, character and the general reputation of consumers. 15 U.S.C. § 1681(a), Congressional findings and statement of purpose; Accuracy and fairness. Consumer reporting agencies, aka credit bureaus, have **assumed a vital role** in assembling and evaluating information on consumers. Congress found a need to insure that consumer reporting agencies exercise their "grave responsibilities" with fairness. *Id.*

The Honorable Kenneth J. Mansfield
United States District Court
April 22, 2024
Page | 3

The FCRA's purpose to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit and other information in a manner which is fair and equitable to the consumer, with regard to accuracy and proper utilization of such information in accordance with the laws of the FCRA. 15 U.S.C. § 1681(b), Congressional findings and statement of purpose; Reasonable Procedures.

In exchange for money, credit bureaus, known in the law as consumer reporting agencies, regularly assemble consumer credit information for the purpose of furnishing consumer reports to third parties. 15 U.S.C. § 1681a(f). Experian, one of our nation's largest consumer reporting agencies, is aware of its obligation to conduct a federally mandated investigation (called 'reinvestigation')[3] into a dispute it receives about any item of credit in a consumer's credit file. 15 U.S.C. § 1681i(a)(1)(A). Credit bureaus, known in the law as consumer reporting agencies, must also notify data furnishers of the existence of any consumer dispute. 15 U.S.C. § 1681i(a)(2)(a).[4] Like a news outlet, a consumer reporting agency may choose to broadcast news about a person over that person's dispute. But if a CRA exercises its "grave responsibilities" in a manner that is negligent (15 U.S.C. § 1681o) or willful (15 U.S.C.S. § 1681n), including reckless; the CRA subjects itself to the consequences imposed by the Fair Credit Reporting Act, including actual and punitive damages.

**What Mr. Durham Must Prove at Trial.** Mr. Durham brings his claims against Defendants under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681 et seq., specifically §1681i (failure to conduct reasonable reinvestigation) and §1681e(b) (failure to follow reasonable procedures to assure maximum possible accuracy when preparing a consumer report). Mr. Durham is required to supply evidence that Experian's conduct and lack of reasonable procedures were negligent to the point of being reckless. The same type of evidence which supports negligence is used to establish recklessness. The FCRA provides no bright-line rule for what constitutes 'reasonable,' leaving the parties

---

[3] The existence of *investigative* consumer reports, including but not limited to any 'consumer report' as defined by the FCRA, presumes some form of an investigation took place to gather information. 15 U.S.C. § 1681a(e). A reinvestigation is therefore an investigation which determines the accuracy and completeness of that information which is in dispute.

[4] **(2)** Prompt notice of dispute to furnisher of information.
   **(A)** In general. Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

The Honorable Kenneth J. Mansfield
United States District Court
April 22, 2024
Page | 4

to their advocacy. But courts have provided some guidance as to a few avenues as mentioned below. To prove his case, Mr. Durham intends to show, as relevant to dispute:

- The identity of any known witnesses. [Topic 2].
- Items which are mandated by Rule 26(a)'s disclosures. Topic 25 (Identify all documents or persons that you may offer to support any defense raised by you.) and Topic 28 (Identify any witnesses likely to have discoverable information—along with the subjects of that information—that you may use to support your claims or defenses); Topic 12 (Existence and description of all documents, electronically stored information, and tangible things that you have in your possession, custody, or control and may use to support your defenses.)
- Experian failed to take any reasonable actions following receipt of Mr. Durham's disputes, chose to rely on the same bad source of information over Mr. Durham, and did not involve any actual people in any meaningful way. [Topic 26]. See *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997). See, e.g., *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994) ("a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information")[5]
- The existence of any error made by Experian. [Topic 4].
- Experian failed to involve anyone other than its outside counsel to investigate the allegations of the complaint. [Topic 24].
- Experian significantly skims on staffing for investigations in order to save on costs [Topic 29],[6] which pale in comparison to Experian's profit margin from selling data which comes from the same source which stores disputed information. [Topic 30].

---

[5] The jury could have concluded that after TUC was alerted to the accusation that the accounts were obtained fraudulently, and then confronted with the credit grantors' reiteration of the inaccurate information, TUC should have known that the credit grantors were "unreliable" to the extent that they had not been informed of the fraud. See *Henson*, 29 F.3d at 286; see also *Pinner*, 805 F.2d at 1262 (where consumer informed consumer reporting agency of his personal dispute with manager of credit grantor, it was unreasonable under § 1681i(a) for consumer reporting agency to rely solely on manager for information); cf. *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (similar efforts insufficient under § 1681e(b)).

[6] Citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997)), the Fourth Circuit held: To determine reasonableness, courts have applied an analysis "weighing the cost of verifying disputed information against the possible harm to the consumer - logically applies in determining whether the steps taken (and not taken) by a company in investigating a dispute constitute a reasonable investigation." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432-33 (4th Cir. 2004).

The Honorable Kenneth J. Mansfield
United States District Court
April 22, 2024
Page | 5

- The number of disputes an agent processes goes directly to the reasonableness analysis by providing a basis for the cost of the investigation to plaintiff.[7]
- Experian's correspondence to Mr. Durham, and the public, supplies conclusions using Experian's definitions which are inconsistent plain meanings of the words it uses, including "verify," "accurate" and "inaccurate." Topic 9.
- The disputed credit item is inaccurate. [Topics 3, 6, 14 & 23].
- Experian has a significant number of subscribers to monitor. [Topic 17]. So Experian expressly disclaims responsibility under the law through its 'subscriber agreements,' mandated contracts with the companies which provide it data (furnishers). [Topic 22].
- Experian has chosen to understaff [Topic 21], and employs an inadequate amount of investigators in comparison to the astronomical disputes it receives and processes. [Topic 27]. And the majority of dispute agents Experian uses are employed overseas for cheaper labor, including people who lack English proficiency. [Topic 32].
- Experian understaffs and underpays its dispute agents, those people (when people are involved) tasked with conducting reasonable investigations. The circumstances, pay, quotas and lack of sufficient auditing/records all provide a recipe for lackluster investigations and a disregard for the law at issue. As such, Mr. Durham intends to show Experian's dispute agents' deficient performance is designed for that result. And bonus evaluations, production statistics, and pay to employee dispute agents and third party vendors, and the quantity of disputes tend to prove these points.
- Experian has sufficient resources to conduct more fulsome, reasonable, and law-abiding investigations, as proven by its substantial profit from the sale of consumer reports in the years 2022-23. [Topic 16]. Experian's financials (revenue, profit and balance sheets, taxes, insurance, etc.) during the relevant time period tend to prove same. [Topic 19].
- Defendants have been on notice of the inadequacy of their investigations and inaccuracies in their files. Regulatory reports and advisory opinions, CFPB complaints and Defendants' statistics concerning the numbers of credit file disputes tend to show this.
- Experian has pled certain affirmative defenses (5-7 & 9) which lack any factual support. [Topic 11]. And the foundation for Experian's denial of liability is not based on any facts. [Topic 15].
- Whether Experian has supplied complete information through written discovery. [Topics 7 & 13].

---

[7] See *Cushman*, 115 F.3d at 222, 225 (fact that agency paid its clerks $ 7.50 per hour and expected them to perform ten investigations per hour was relevant in cost-benefit analysis to determine whether particular investigation was reasonable. "[T]he jury could have concluded that seventy-five cents per investigation was too little to spend when weighed against Cushman's damages."))

The Honorable Kenneth J. Mansfield
United States District Court
April 22, 2024
Page | 6

- Constitutional Due Process requirements consideration of (1) the degree of reprehensibility of the Defendants' misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003). Other factors in awarding punitive damages include whether: "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the conduct involved repeated actions or was an isolated incident; and [whether] the harm resulted from intentional malice, trickery, or deceit, or mere accident." *State Farm*, *id* at 437 (citing *BMW of N. Am. v. Gore,* 517 U.S. 559, 576–77 (1996)). To comply with Due Process, Mr. Durham must show Experian's wealth (here, Experian derives profit from the sale of consumer credit reports, including Mr. Durham's) must bear some relation to the harm sustained by the plaintiff. *See State Farm*, 538 U.S. at 427.

As shown above, Plaintiff has catered the Rule 30(b)(6) notice to the needs of the case in accordance with his needs at trial. Experian raises a raft of boilerplate objections, all of which lack merit: There are no "catch-all" topics. Experian cannot escape answering as to the words it used in its correspondence to Mr. Durham by summarily claiming those words may have a legal connotation. The Rule 30(b)(6) representative is not required to memorize anything; he or she may rely on documents and notes, as documents in fact provide the only basis for Experian's knowledge.

The identity of known witnesses is not confidential and if it were, Experian fails to identify how. Discovery may be sought in any order. See FRCP 26. Experian fails to prove any item confidential. And Experian's use of boilerplate language (highly confidential, proprietary and/or trade secret) is not magic language indicative of a protectible interest. Experian cannot use its in-house lawyers to train its staff to conduct investigations which are the subject of the suit, only to claim privilege. And the foundation for Experian's disclaimer of liability is discoverable. Experian's desire to limit the proper inquiries made by Mr. Durham should be denied.

### **EXPERIAN'S POSITION**

Plaintiff has not pled what he asserts above. Plaintiff's Complaint contains only the following factual allegations:

5.  Experian did no investigation into Plaintiff Demetre Durham's ("Mr. Durham") dispute of an accurate item ("National Credit Adjusters, LLC") contained in Experian's file for Mr. Durham.
6.  Mr. Durham did not owe the alleged debt to National Credit Adjusters, LLC ["NCA"] as he never opened the original account and never incurred the debt.
7.  Mr. Durham disputed the debt with Experian.
8.  Experian did not modify, delete, or block the disputed information.

The Honorable Kenneth J. Mansfield
United States District Court
April 22, 2024
Page | 7

      9.    Experian did not conduct the requisite investigation into the clearly false credit information.
      10.   As a result of Experian's verification of the inaccurate reporting Mr. Durham had to incur costs in obtaining a police report and sending a second dispute via certified mail.
      11.   Mr. Durham was stressed as a result of Experian's inaction and lack of procedures to secure accurate reporting.

Plaintiff has alleged only a bare bones failure to reinvestigate claim under 15 U.S.C. § 1681i and, contrary to his allegations above, has not alleged a 15 U.S.C. § 1681e(b) reasonable procedures claim. While Plaintiff claims his categories are carefully curated to this case, in reality, Plaintiff's pro hac vice counsel has served substantially the same sets of 30(b)(6) categories in other cases against Experian in other jurisdictions which Experian can provide to the court upon request.

**DISPUTED TOPICS LISTED IN PLAINTIFF'S 30(b)(6) NOD**

Plaintiff's NOD identifies **32** categories of topics. Due to the page limits the NOD and Experian's written objections thereto are not attached but are available upon the Court's request. The following categories which remain in dispute are:

| No. | Quoted Topic |
|---|---|
| 2 | The identity of any known witnesses (names, residential addresses, phone numbers, email addresses, and employer) likely to have discoverable information—along with the subjects of that information—that you may use to support your claims or defenses. |
| 3 | The documents and information available to Experian indicating Experian's file-specific to the National Credit Adjusters, LLC tradeline within 2 years preceding Plaintiff's complaint-was accurate. |
| 4 | Whether Experian made any error concerning the reporting or reinvestigation concerning Demetre Durham's file or Demetre Durham's disputes. |
| 6 | Experian's actions and due diligence to determine the accuracy of the tradeline at issue. |
| 7 | The completeness and any non-privileged withheld information concerning Experian's written discovery responses to Requests for Production #1, 2, and 5, Interrogatory # 1, and Requests for Admission 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 19, and 20. |
| 9 | Experian's knowledge, understanding and application of the terms "verify," "accurate" and "inaccurate." |
| 10 | Experian's knowledge, understanding and application of the legal impact of 5 court decisions. |
| 11 | The factual basis of your affirmative defenses to the operative complaint in this lawsuit, specifically: Experian's Affirmative Defenses #5, 6, 7, and 9. This topic includes providing the identity of any persons or documents relating to any factual basis. |
| 12 | Existence and description of all documents, electronically stored information, and tangible |

The Honorable Kenneth J. Mansfield
United States District Court
April 22, 2024
Page | 8

| | |
|---|---|
| | things that you have in your possession, custody, or control and may use to support your defenses. |
| 13 | Concerning the investigation done by Experian for its responses to discovery in this case: a) The systems, process, and purpose for the creation, duplication, and/or storage of the documents requested through discovery, including an explanation of the report generation, search functions, history or other functions of any systems or processes. b) All document retention and destruction policies that would relate to any of the documents requested through discovery. c) The existence and location of the documents requested through discovery. d) The organization, indexing, and/or filing of the documents requested through discovery. 6 e) The method of search for the documents requested through discovery. f) The completeness of the documents requested through discovery. g) The authenticity of documents identified in any of the disclosures, pleadings, and/or documents requested through discovery. |
| 14 | The foundation of your conclusion that Plaintiff was responsible for the National Credit Adjusters, LLC debt indicated by that tradeline in Experian file for Demetre Durham—since his February 10, 2023 dispute—and the foundation for your belief that the reporting was accurate. |
| 15 | The foundation on which you rely to disclaim liability. This topic includes providing the identity of any persons or documents relating to any foundation. |
| 16 | Experian's gross and net income from the sale of consumer reports for the 2022 and 2023 calendar years, broken down by year. |
| 17 | Number of Experian subscribers in the years 2022 and 2023. |
| 19 | Your revenue and profit for each quarter and year since 1/1/2023. |
| 21 | The actual or approximate number of employees working for Experian from the date of Demetre Durham's 2/10/23 dispute to March 30, 2024. |
| 22 | Any contracts or agreements that relate to your review of any dispute submitted by Demetre Durham. This topic includes providing the identity of any persons who may have any knowledge of the contracts or agreements and their terms and to identify any documents concerning any contracts or agreements identified by you. |
| 23 | The foundation of Experian's belief(s), concerning the National Credit Adjusters, LLC tradeline, that items disputed by Demetre Durham to Experian were accurate and/or inaccurate.2 This topic includes providing the identity of any persons and documents relating to the foundation of your belief(s) and verification of disputed information as accurate. You should be prepared to state whether and when such information was given or obtained by you. |
| 24 | Identify all persons who contributed to responding to the factual averments in the complaint in this lawsuit. See ECF 1. |
| 25 | Identify all documents or persons that you may offer to support any defense raised by you. |
| 26 | State the details of all actions taken by you upon receipt of any dispute received from Demetre Durham or any decisions made after receipt of any 2 You should be prepared to |

The Honorable Kenneth J. Mansfield
United States District Court
April 22, 2024
Page | 9

| | |
|---|---|
| | state whether and when such information was given or obtained by you. 8 of Demetre Durham's disputes of National Credit Adjusters. This includes the identity and last known address of any person who has knowledge of the above and identification of any documents relating to the above. |
| 27 | The number of disputes Experian has received and processed—concerning disputes of an item in a consumer's file—in the each of the years since the beginning of 2022 and through the date of this deposition notice categorized by each of the following dispute types: a) Identity theft disputes b) Mixed file disputes c) General disputes d) All disputes. |
| 28 | Identify any witnesses (names, residential addresses, phone numbers, email addresses, and employer) likely to have discoverable information—along with the subjects of that information—that you may use to support your claims or defenses. |
| 29 | From January 1, 2023 through March 31, 2024, Experian's labor cost for processing consumer file disputes, and the amounts Experian charges subscribers to process consumer disputes. |
| 30 | From January 1, 2023 through March 31, 2024, the amount Experian charged or charges for selling consumer reports. If Experian charges 9 different amounts to different subscribers or for different file types, that information should be given. |
| 32 | From January 1, 2023 through March 31, 2024, the number of individuals processing consumer disputes, a/k/a reinvestigations: a) Employed by Experian working in a foreign country; b) Employed by Experian working in the United States; c) Employed by a vendor or contractor working in a foreign country; d) Employed by a vendor or contractor working in the United States. |

Experian has notified Plaintiff that it has objected to the following topics on the following bases:

| Nos. | Objection |
|---|---|
| 2, 6, 12, 14, 22, 23, 25 & 28 | These are "catch-all" topics lack the specificity required to identify a proper Rule 30(b)(6) topic. |
| 2, 4, 6, 9, 14, 23 & 28 | These topics seek testimony that requires a legal opinion, analysis and/or conclusion. |
| 2, 9, 11, 12, 15, 22, 23, 24, 25, 26 & 28 | These topics are overly burdensome and requires rote memorization that is not required for Rule 30(b)(6) depositions. *Clay v. Dart,* No. 19 CV2412, 2023 WL4205531, at *4 (N. D. Ill. June 27,2023) ("Rule 30 (b)(6) depositions are 'not designed to be a memory contest.'" (quoting *Seaga Mfg., Inc. v. Intermatic Mfg., Ltd.,* No. 13 C 50041, 2013 WL 3672964, at *2 (N. D. Ill. July 12, 2013)); *see also, Da Silva v. NYC Transit Auth.*, 2023 U. S. Dist. LEXIS 207974 *10, and *Burgess v. Daimler Truck N. Am., LLC*, 24 U.S. Dist. Lexis 18953 *7. |
| 2 & 28 | Certain of the personal information of witnesses is barred by HRS §92-4 as private and confidential; employees may only be contacted in c/o Experian. |
| 3 | This Topic as worded does not make sense for the time period indicated. This |

The Honorable Kenneth J. Mansfield
United States District Court
April 22, 2024
Page | 10

| | |
|---|---|
| | Topic will be responded to by Experian only for the limited time that the NCA tradeline appeared on Plaintiff's credit file from February 20 to April 2023. |
| 7, 12 & 25 | This topic seeks testimony on documents that have not been produced and on the legal objections or responses prepared by Experian's counsel. |
| 7, 12, 13 & 25 | This topic seeks documents and information that are confidential as designated on the Privilege Log provided by Experian to Plaintiff. |
| 7, 10, 12, 13, 24 & 25 | The documents and information requested in this topic are protected by the attorney-client, work product and/or any other privilege or protection. |
| 9, 10, 14, 22 & 23 | The topic does not describe with reasonable particularity the matters for examination such that Experian could be expected to adequately prepare a witness to testify on this topic. |
| 9, 14, 15, 23 & 24 | The topics contain terms which are vague and ambiguous. |
| 10 | The topic is overbroad and unduly burdensome; it could be read to seek testimony regarding every court decision ever issued. |
| 16, 17, 19, 21, 27, 29, 30 & 32 | The information sought in this Topic is not relevant to either party's claims or defenses and has no bearing on whether Experian investigated (or reinvestigated) Plaintiff's disputes. |
| 16 & 19 | The sought financial information has no bearing on whether Experian investigated (or reinvestigated) Plaintiff's disputes at issue in this case; the topic is premature, as the only conceivable potential relevance of such an interrogatory would be for an award of punitive damages; evidence of a defendant's financial condition and other evidence relevant only to punitive damages is not admissible until after a finding of liability that compensatory damages are recoverable; and no finding of liability for compensatory damages has been determined. |
| 16, 17, 19, 22 & 29 | The topic calls for the disclosure of highly confidential, proprietary and/or trade secret information. |
| 17, 21, 26, 27, 29 & 32 | The topic and/or time limit are unduly burdensome and unreasonable and calls for information that is not readily available. |

Experian seeks a protective order limiting the areas of examination in topics 2, 3, 4, 6, 7, 9, 10, 11, 12, 13, 14, 15, 23, 25, 26, and 28 to Experian's processing of Plaintiff's disputes, Experian's documentation of the same, including its written discovery responses and to the relevant time period of February 2023 to April 2023. Experian further seeks a protective order preventing Plaintiff's counsel from questioning its witness regarding any of the information identified in topics 16, 17, 19, 21, 22, 24, 27, 29, 30 and 32. Plaintiff opposes Experian's requested relief.

Thank you for the Court's time and consideration.

                                                                         Respectfully submitted,

The Honorable Kenneth J. Mansfield
United States District Court
April 22, 2024
Page | 11

*/s/ Justin A. Brackett*
JUSTIN A. BRACKETT
DURAN KELLER

Attorneys for Plaintiff
DEMETRE DURHAM


*/s/ Deborah K. Wright*
DEBORAH K. WRIGHT
DOUGLAS R. WRIGHT

Attorneys for Defendant
EXPERIAN INFORMATION
SOLUTIONS, INC.